UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN BLASZCZYK,                                           REPORT AND
                        Plaintiff,                 RECOMMENDATION
            - against -
M3 DEVELOPMENT GROUP INC., et al.,                        18-CV-5641 (KAM) (JO)
                        Defendants.
----------------------------------------------------------------X

James Orenstein, Magistrate Judge:

Plaintiff John Blaszczyk ("Blaszczyk") has accused four defendants – M3 Development Group Inc. ("M3"), Giuseppe Abbrancati ("Abbrancati"), Michael Specchio, Jr. ("Specchio"), and Gappsi, Inc. ("Gappsi") – of violating his rights under federal and state wage laws. *See* Docket Entry ("DE") 1 (Complaint); 29 U.S.C. §§ 201, *et seq.* (the Fair Labor Standards Act , or "FLSA"); N.Y. Lab. Law. § 190, *et seq.* (the New York Labor Law, or "NYLL"). Blaszczyk settled with Abbrancati and Gappsi. *See* Order dated Apr. 14, 2020; DE 41. M3 and Specchio never appeared, and Blaszczyk now seeks a default judgment against them. *See* DE 19. Upon a referral from the Honorable Kiyo A. Matsumoto, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court dismiss as abandoned the Complaint's fourth through seventh claims for relief, enter a default judgment against M3 and Specchio jointly and severally on the first three claims in the total amount of $34,879.23, consisting of $4,397.50 in unpaid wages, the same amount in liquidated damages, $5,000 for each of the two statutory notice-related violations, $1,072.39 in prejudgment interest, $14,099.00 in reasonable attorneys' fees, and $912.84 in costs.

I.      Background

For purposes of assessing the default judgment motion, I assume the Complaint's well-pleaded factual allegations to be true. Blaszczyk worked as a laborer for the defendants' construction companies, boarding up vacant houses and raising fences on vacant properties for the town of Hempstead, New York, from June 2016 through August 2018. During his tenure, he also worked on

other residential construction projects for the defendants. Although Blaszczyk routinely worked more than forty hours per week the defendants did not pay him the statutorily required premium overtime wages, and they also failed to provide him with a written notice of his wage rate and regular wage statements. *See* Complaint ¶¶ 35-56.[1]

Blaszczyk filed the Complaint on October 9, 2018. *See* DE 1. He initially asserted seven causes of action: failure to pay overtime wages in violation of the FLSA and NYLL, respectively; violation of the New York Wage Theft Protection Act, NYLL § 195, based on the defendants' failure to provide a wage notice and wage statements; failure to maintain records as required under the FLSA and NYLL, respectively; and common law claims for conversion and unjust enrichment. *See* Complaint ¶¶ 57-101. He later withdrew the records-keeping and common law claims. *See* DE 45-11 at 17.

Blaszczyk served process on M3 and Specchio on November 8, 2018. *See* DE 7; DE 8. Neither defendant responded to the Complaint, and at Blaszczyk's request, the Clerk entered the default of each on February 21, 2019. *See* DE 14; DE 16. Blaszczyk filed the instant motion for default judgment on April 24, 2019. *See* DE 19. Because the other defendants had appeared by that time, Blaszczyk agreed that the court should hold the motion in abeyance pending the resolution of the claims against Abbrancati and Gappsi. *See* DE 20. After the latter parties settled with Blaszczyk, the court referred the default judgment motion to me by Order dated March 10, 2020. By Order dated April 24, 2020, I scheduled a damages inquest and afforded the parties an opportunity to file

---

[1] Although the Complaint does not detail the relationship among the defendants, Blaszczyk later provided more detail in his testimony at a damages inquest that I summarize here for the reader's convenience but that has no bearing on the analysis below. Blaszczyk originally worked for Gappsi, a company in which Abbrancati and Specchio were partners. After the two partners had a falling-out, Specchio established M3 and took over the Hempstead boarding-up projects, thereby succeeding Gappsi as Blaszczyk's corporate employer. *See* DE 48 (transcript dated Aug. 19, 2020) ("Tr.") at 13-15.

supplemental submissions. *See* DE 42. Blaszczyk timely filed his supplement, including a memorandum of law, Blaszczyk's affidavit, and a supporting declaration by his counsel with exhibits, on July 21, 2020. *See* DE 45 (counsel's supporting declaration) ("Zabell Decl."); DE 45-7 (Zabell Decl. Ex. G) (summary of costs); DE 45-9 (Zabell Decl. Ex. I) proposed judgment); DE 45-10 (Decl. Ex. J) ("Blaszczyk Aff."); DE 45-11 (supporting memorandum) ("Memo.").

I held a damages inquest on August 19, 2020, at which Blaszczyk was the sole witness. Based on his testimony and my colloquy with counsel, I afforded Blaszczyk an opportunity to submit further supplemental papers. *See* DE 47 (minute entry); Tr. at 21. Blaszczyk did so on August 26, 2020. Specifically, his counsel submitted a declaration with exhibits including partial records that Blaszczyk had kept of his own working hours, a revised damages calculation, counsel's updated billing records, an estimate of the attorney time devoted to settling with Abbrancati and Gappsi, and invoices for some of the costs for which Blaszczyk seeks reimbursement. *See* DE 49 (counsel's supporting declaration) ("Biesenbach Decl."); DE 49-2 (Biesenbach Decl. Ex. B) (Blaszczyk's partial record of hours worked); DE 49-3 (Biesenbach Decl. Ex. C) (damages calculations); DE 49-4 (Biesenbach Decl. Ex. D) ("Billing Records"); DE 49-5 (Biesenbach Decl. Ex. E) (report of settlement-related hours); DE 49-12 (Biesenbach Decl. Ex. L) (invoices).

II. Discussion

A. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not suffice to establish liability on its claims; a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no

more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *id* at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159.

  B.  <u>Substantive Federal and State Wage Law</u>

The FLSA applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's wage and overtime protections, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009).

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. *See id.* § 211(c). An employee bringing an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations omitted). If an employer fails to keep the required records, the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Reich*, 121 F.3d at 66-67 (quoting *Anderson*, 328 U.S. at 687-88). A plaintiff

4

may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

The relevant provisions of the NYLL mirror the FLSA in most but not all respects. Similar to the FLSA, New York defines an employer as a "person … employing any" employee. NYLL § 190(3). It likewise requires employers to pay any employee who works as "a mechanic, workingman, or laborer" on a weekly basis with each payment made "not later than seven calendar days after the end of the week in which the wages are earned." *Id.* §§ 190(4), 191(1)(a)(i). New York law also mandates a 150 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2. Unlike the FLSA, however, New York law does not require the plaintiff to show a nexus with interstate commerce or any minimum amount of annual sales. *See Osorio v. Taste of Thai Inc.*, 2018 WL 8059564, at *3 (E.D.N.Y. Sept. 12, 2018) (citation omitted). New York also provides for a longer limitations period: while claims under the FLSA must be brought within two years of a violation (or three years for a willful violation), the corresponding period under the NYLL is six years. *See id.*; 29 U.S.C. § 255(a); NYLL § 663(3). In addition, New York law offers workers protections the FLSA does not: it requires employers to provide each employee with a notice of the employee's wages within ten business days of his first day of employment, as well as accurate wage statements at the time wages are paid. *See* NYLL §§ 195(1)(a), 195(3).

C.  Liability

Blaszczyk has adequately pleaded that he is within the class of protected persons under the FLSA and NYLL, that M3 and Specchio were his employers within the meaning of those statutes, and that those defendants failed to pay him overtime wages or to provide the required notice and statements. *See* Complaint ¶¶ 18-22 (allegations concerning defendants' authority to control Blaszczyk's working conditions and compensation), 29-32 (statutory coverage allegations), 48-50 (alleging failure to pay overtime), 55-56 (alleging failure to provide wage notice and statements). By

5

defaulting, M3 and Specchio admitted those allegations to be true. Blaszczyk has therefore established that M3 and Specchio are both liable for the statutory violations he asserts in the Complaint's first three claims for relief.

D.  Relief

1.  Unpaid Overtime Wages

Blaszczyk seeks $4,782.25 in unpaid overtime wages for the period when he worked exclusively for M3 and Specchio. *See* Biesenbach Decl. ¶ 16 & Ex. C. To establish his unpaid wage damages to a reasonable certainty, Blaszczyk need do no more than "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Gomez v. 4 Runners, Inc.*, 769 F. App'x 1, 2 (2d Cir. 2019) (quoting *Reich*, 121 F.3d at 66-67). That burden is not exacting, and Blaszczyk may rely on estimates based on his own recollection to meet it. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

The record sufficiently establishes that Blaszczyk worked, on average, at least fifty hours per week during the periods at issue without receiving premium overtime wages. *See* Blaszczyk Aff. ¶ 11; Tr. 4-7, 9-11; DE 49-2 (Blaszczyk's partial contemporaneous records of hours worked).[2] The record further establishes that at the start of the relevant time period in August 2017, Blaszczyk's regular hourly wage was $17.00, that it rose to $19.00 in January 2018, and rose again to $21.00 in June 2018 and remained at that level until the end of his employment. *See* Blaszczyk Aff. ¶¶ 8-10; Tr. at 4.[3] Blaszczyk therefore earned $4,810.00 in overtime wages as summarized below.

---

[2] Blaszczyk's partial contemporaneous records are undated. I therefore reject as unduly speculative Blaszczyk's suggestion that the court should assume the eleven weeks for which he has submitted records all occurred at the end of the relevant period, when his regular wage rates were the highest. *See* Biesenbach Decl. ¶ 9.

[3] Blaszczyk's summary damages calculation, in what appears to be an error, reflects an hourly wage of $18.00 for the first five months of 2018. *Compare* DE 49-3 (calculation based on $18.00 rate) *with* DE 45-5 (earlier version of damages calculations based on $19.00 rate consistent with Blaszczyk's recollection). I base my calculations on the $19.00 rate that the record supports.

| Period start | 7/31/17 | 1/1/18 | 5/28/18 | |
|---|---|---|---|---|
| Period end | 12/31/17 | 5/27/18 | 7/29/18 | |
| Number of weeks in period | 22 | 21 | 9 | |
| Hours worked per week | 50 | 50 | 50 | |
| Overtime hours worked per week | 10 | 10 | 10 | |
| Regular hourly wage | $17.00 | $19.00 | $21.00 | |
| Hourly overtime premium | $8.50 | $9.50 | $10.50 | Total |
| Overtime wages earned | $1,870.00 | $1,995.00 | $945.00 | $4,810.00 |

Although the record establishes that M3 and Specchio usually failed to pay Blaszczyk any overtime wages, Blaszczyk testified that he on five or six occasions when he worked overtime, Specchio gave him additional payments of $50.00 or $100.00. *See* Tr. 12-13. Averaging that otherwise unaccounted-for compensation to 5.5 payments of $75.00 each produces a setoff of $412.50 to account for a reasonably certain amount of overtime wages that Blaszczyk acknowledges receiving. Subtracting the latter amount from the total amount of overtime wages that Blaszczyk earned produces a total of $4,397.50. I therefore respectfully recommend that the court award that amount in unpaid overtime wages.

2. Liquidated Damages

Federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that her employer has failed to pay required wages. An employer who violates the FLSA "shall be liable" for unpaid minimum and overtime wages in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[4] The same amount of liquidated damages is available under the NYLL. *See* NYLL § 198(1-a). Because the two regimes provide for the same measure of liquidated damages, they presumably are designed to remedy similar harms; accordingly, the court

---

[4] A defendant employer can avoid such an award by proving that the violation was the result of a good faith error. *See* 29 U.S.C. § 260; *see Reich*, 121 F.3d at 70-71. A defaulting defendant necessarily fails to meet that burden and should therefore be liable for liquidated damages. *See Castellanos v. Deli Casagrande Corp.*, 2013 WL 1207058, at *6 (E.D.N.Y. Mar. 7, 2013) (report and recommendation), *adopted*, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013).

7

should award liquidated damages only under one statute rather than award cumulative liquidated damages under both. *See, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012); *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 381 & n.3 (E.D.N.Y. 2013) (rejecting request for cumulative awards of liquidated damages), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). I therefore conclude that on his first two causes of action, Blaszczyk is entitled to $4,397.50 in liquidated damages.

### 3. Wage Notice and Statements

An employee who does not receive a wage notice within ten business days of his or her first day of employment may recover $50.00 for each workday that the violation continues, up to a maximum of $5,000.00. NYLL § 198(1-b). Blaszczyk worked for M3 and Specchio for more than 100 days without ever receiving the required notice. *See* Tr. 3-4; Complaint ¶ 55. Similarly, New York law requires employers, when paying an employee's wages, to provide the employee a wage statement containing certain information, including the hours being compensated, the wages paid, and any deductions. *See* NYLL § 195(3). An employee may recover $250.00 per day for each violation, up to a maximum of $5,000.00. *See* NYLL §§ 195(1)(a), 197, 198(1-d). M3 and Specchio failed to provide Blaszczyk with the required wage statements for more than twenty days. *See* Complaint ¶ 56. Accordingly, on the third cause of action, Blaszczyk is entitled to $10,000.00 for the wage notice and statement violations.

### 4. Prejudgment Interest

New York law generally provides for an award of prejudgment interest on a variety of claims, including the claims for unpaid wages asserted here, at an annual rate of nine percent. *See* N.Y. C.P.L.R. §§ 5001, 5004. Where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). A court has discretion to choose a reasonable accrual

8

date. *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994). Courts often select the median date between the earliest ascertainable date the action arose, and the date the plaintiff filed suit. *See, e.g., Pavia v. Around the Clock Grocery, Inc.*, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005). Blaszczyk began working for M3 and Specchio on July 31, 2017, and filed suit on October 9, 2018; the median between those dates is March 5, 2018. Applying a nine percent annual interest rate to a principal amount of $4,397.50 (the total unpaid wages) over the 989-day period between the median date and November 18, 2020 (the earliest judgment date after allowing for objections to this report), I respectfully recommend an award of prejudgment interest in the amount of $1,072.39.

        5.    <u>Attorneys' Fees</u>

Blaszczyk seeks an award of $14,099.00 in attorneys' fees (an amount that excludes time his counsel billed for pursuing settlement with defendants Abbrancati and Gappsi). *See* Biesenbach Decl. ¶¶ 11, 16. Both federal and state law authorize the court to award Blaszczyk his reasonable attorneys' fees. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing cases).[5] A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420-21 (2d Cir. 2010); *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services of

---

[5] I use the term "lodestar" only for ease of reference. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 n.4 (2d Cir. 2008); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (describing the lodestar as producing a "presumptively reasonable fee" and noting that failure to calculate it as a starting point in determining a fee award is "legal error").

9

lawyers of reasonably comparable skill, experience, and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 WL 1042936, at *7 (E.D.N.Y. Feb. 17, 2012) (report and recommendation, quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)), *adopted*, 2012 WL 1041820 (E.D.N.Y. Mar. 28, 2012). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation warrants reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *7-8 (E.D.N.Y. July 22, 2005).

Blaszczyk seeks reimbursement for his counsel at hourly rates ranging from $225.00 to $450.00 for attorneys and $100 for paralegal assistants and support staff. *See* Biesenbach Decl. ¶¶ 11-14; Billing Records. Although I would normally analyze the request in detail and likely recommend a slight downward adjustment of the rates Blaszczyk's attorney claim to conform to the practice in comparable cases in this district, there is no need to do so here. Blaszczyk's counsel reasonably worked sufficient hours on this case (in which he had to litigate against two defendants notwithstanding the defaults of M3 and Specchio) that regardless of any adjustment to the claimed hours and rates, the lodestar would exceed the amount Blaszczyk requests. For example, attorney Ryan Biesenbach ("Biesenbach") billed approximately 46.8 hours of work, out of a total of some 130 hours that Blaszczyk's counsel billed in the aggregate. At a claimed hourly rate of $325.00, Biesenbach's work alone would warrant a fee award of $15,210.00, which exceeds the total amount

of attorneys' fees Blaszczyk seeks. I therefore respectfully recommend that the court grant Blaszczyk's request for an award of reasonable attorneys' fees in the amount of $14,099.00.

    6.  <u>Costs</u>

Blaszczyk seeks an award of $912.84 in costs. *See* Biesenbach Decl. ¶ 16. Both federal and state law authorize such an award. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Blaszczyk seeks reimbursement for the costs of filing suit, serving process, serving notice of the inquest, and securing the inquest transcript, and he has adequately documented each claimed expense. *See id.* ¶ 15; DE 49-12 (invoices). I therefore respectfully recommend award $912.84 in costs.

III. <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court dismiss as abandoned the Complaint's fourth through seventh claims for relief, enter a default judgment against M3 and Specchio jointly and severally on the first three claims in the total amount of $34,879.23, consisting of $4,397.50 in unpaid wages, the same amount in liquidated damages, $5,000 for each of the two statutory notice-related violations, $1,072.39 in prejudgment interest, $14,099.00 in reasonable attorneys' fees, and $912.84 in costs.

IV. <u>Objections</u>

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on each defaulting defendant by certified mail, and to file proof of service no later than November 6, 2020. Any objections to this Report and Recommendation are due by November 17, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner &*

*Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

    SO ORDERED.

Dated:  Brooklyn, New York
       November 3, 2020

                                          /s/
                                  James Orenstein
                                  U.S. Magistrate Judge